## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CORETTA COLLIER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-24-1224-D |
| | ) |
| DAVID P. STEINER, Postmaster | ) |
| General[1]; and VICTORIA POLITO, | ) |
| | ) |
| Defendants. | ) |

### ORDER

Before the Court is Defendant David P. Steiner's Motion to Dismiss Plaintiff's Complaint with Brief in Support [Doc. No. 29]. Plaintiff, appearing pro se, filed a response [Doc. No. 30], and Defendant filed a reply [Doc. No. 32]. The matter is fully briefed and at issue.

### BACKGROUND

Plaintiff, an African American female, alleges a variety of employment discrimination claims against her employer, the United States Postal Service (USPS). Plaintiff alleges that, during her employment, she was discriminated against because of her race and disability. Plaintiff also alleges that she was subjected to a hostile work environment and that she was retaliated against for engaging in EEO activity.

To summarize the Complaint [Doc. No. 1], Plaintiff alleges that she was the only African American Assistant Rural Carrier at the Enid Post Office. *Id.* at 5. On April 25,

---

[1] Pursuant to FED. R. CIV. P. 25(d), Mr. Steiner is automatically substituted as the proper party defendant.

1

2020, Customer Service Supervisor Victoria Polito changed Plaintiff's assigned route from Route #7 to Route #9 without notifying Plaintiff, and Plaintiff had not been trained on "casing" Route #9. *Id.* After telling Ms. Polito that she was never trained on casing Route #9, Ms. Polito told Plaintiff: "You are just an ARC and I'm not going to train you, and no one is going to help you." *Id.* Thereafter, Plaintiff told Ms. Polito that she had another job, and Ms. Polito responded that she was going to make sure Plaintiff did not get any more hours and "removed [Plaintiff] from the schedule." *Id.* at 6.

Apparently during the same confrontation on April 25, Plaintiff told Ms. Polito to get out of her face, and Ms. Polito refused. Ms. Polito then told Postmaster Wendell Brown that Plaintiff had been yelling at her and "was refusing to case Route #9." *Id.* Ms. Polito then returned and began arguing with Plaintiff again. *Id.*

On April 27, 2020, Plaintiff turned in her resignation letter to Mr. Brown. *Id.* Later that evening, Plaintiff filed EEO claims of discrimination based on race and harassment against Ms. Polito. *Id.* On April 28, 2020, Plaintiff rescinded her resignation letter and verbally told Mr. Brown that she had filed an EEO complaint against Ms. Polito. *Id.* at 6-7.

After Plaintiff had been put back on the schedule, she was directed to participate in an Investigative Interview by Ms. Polito, and on May 12, 2020, Plaintiff was issued a notice of removal for "failing to follow instructions." *Id.* at 7. On May 19, Plaintiff "filed a grievance on the removal letter and verbally told Polito 'she didn't follow the rules.'" *Id.* Ms. Polito allegedly told Plaintiff, "I don't have to follow the rules with you because you do not have the same rights as your coworkers," and that "management has the right to

extend a removal for just cause reasons such as insubordination and failure to perform work as requested." *Id.*

On May 21, 2020, Ms. Polito was notified by EEO Specialist Chandra Steel that Plaintiff had initiated an EEO complaint against her. *Id.* (citing Doc. No. 1-19). On May 28, Plaintiff reported Ms. Polito's "harassment, retaliation, and racial discrimination" to USPS management. *Id.* In the summer of 2020, Plaintiff also received an anonymous letter [Doc. No. 1-23], in which unnamed coworkers informed Plaintiff that Ms. Polito had referred to her as "Aunt Jemima" in October of 2019. *Id.* at 8.

Plaintiff further alleges that she had asthma and that she had requested delivery routes without dirt roads. *Id.* Plaintiff was reportedly told by the accommodation committee that she would be accommodated. *Id.* at 9. However, on August 31, 2020, the accommodation committee denied Plaintiff's requested accommodation. *Id.* Plaintiff alleges that she "had been removed from the schedule … since June 22, 2020." *Id.* During this time, Plaintiff had received an absence inquiry [Doc. No. 1-31], inquiring as to Plaintiff's prolonged absence from work. *Id.* at 10. Thereafter, Plaintiff attempted to report to work in October of 2020, but she was told that her doctor note had not been approved. *Id.* Plaintiff's accommodation request was apparently reconsidered in May of 2021, but Plaintiff alleges that she is still waiting to hear about her accommodation and that she "remains off the schedule … to date." *Id.*

Liberally construed, Plaintiff asserts the following claims against Defendant[2]:

---

[2] Plaintiff initially filed suit against the Postmaster General *and* Ms. Polito, in her individual capacity [Doc. No. 1, at 1]. However, in Plaintiff's response, she concedes that the Postmaster

3

employment discrimination, retaliation, and hostile work environment, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* (Title VII); and disability discrimination and failure-to-accommodate, in violation of The Rehabilitation Act of 1973, 29 U.S.C. §§ 701, *et seq.* (Rehabilitation Act). Defendant has moved to dismiss each of Plaintiff's claims, pursuant to FED. R. CIV. P. 12(b)(6).

## STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The statement must be sufficient to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotations and citation omitted). Under this standard, a complaint needs "more than labels and conclusions," but it "does not need detailed factual allegations." *Id.* Rather, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

At the pleading stage, the Court must "accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the

---

General is the proper agency defendant for Plaintiff's claims [Doc. No. 30, at 19]. Plaintiff further stated that she would not oppose the dismissal of Ms. Polito in her individual capacity. *Id.* Accordingly, Defendant Victoria Polito will be dismissed from this action.

plaintiff." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). However, "if [allegations] are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiff[] [has] not nudged [her] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (internal quotations omitted). Although pro se pleadings are to be liberally construed, district courts should not "assume the role of advocate for the pro se litigant." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

## DISCUSSION

### I. Discrimination Based on Race (Title VII)

Plaintiff asserts that she was discriminated against based on her race, in violation of Title VII. Title VII makes it unlawful "to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

For Title VII claims, "[w]hile the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). Because Plaintiff's complaint contains no evidence of direct discrimination, the Court evaluates the plausibility of Plaintiff's claims by "examin[ing] the first step of the *McDonnell Douglas* framework: the elements [Plaintiff] would need to establish to prove" a prima facie case for her race-based discrimination claim. *See Morman v. Campbell Cnty. Mem'l Hosp.*, 632 F. App'x 927, 933

(10th Cir. 2015) (unpublished).[3] A plaintiff establishes a prima facie case of discrimination by showing that "(1) the victim belongs to a class protected by Title VII, (2) the victim suffered an adverse employment action, and (3) the challenged action took place under circumstances giving rise to an inference of discrimination." *Throupe v. Univ. of Denver*, 988 F.3d 1243, 1252 (10th Cir. 2021) (quoting *EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007)).

Viewing Plaintiff's allegations in the light most favorable to her, the Court finds that Plaintiff has stated a plausible disparate-treatment claim based on her race. Plaintiff alleges that she was the only African American Assistant Rural Carrier in the Enid Post Office, and that she was treated differently than non-African American ARCs. Plaintiff further alleges that Ms. Polito intentionally altered her work schedule to assign her a route that she had not been trained on, refused to train Plaintiff, and told Plaintiff that "[she didn't] have to follow the rules with [Plaintiff] because [Plaintiff did] not have the same rights as [her] coworkers." [Doc. No. 1, at 7]. Ms. Polito further reported Plaintiff for failing to follow instructions and initiated an investigative interview, which led to a notice of removal that was later downgraded to a 14-day suspension. Notably, Plaintiff also alleges that she received an anonymous letter from two coworkers, stating that they had overheard Ms. Polito respond to Plaintiff asking her a question with, "I just wish she would shut her Aunt Jemima mouth." [Doc. No. 1-23]. The "Aunt Jemima" comment reportedly occurred in October of 2019, a few months prior to Plaintiff's altercation with Ms. Polito in April of

---

[3] Unpublished opinions are cited pursuant to FED. R. APP. P. 32.1(a) and 10th Cir. R. 32.1(A).

2020. Upon consideration, and viewing all reasonable inferences in Plaintiff's favor, the Court finds that Plaintiff has plausibly alleged that she suffered an adverse employment action "under circumstances giving rise to an inference of discrimination." *Throupe*, 988 F.3d at 1252. Accordingly, Defendant's motion to dismiss is denied as to Plaintiff's race-based discrimination claim.

## II.    EEO Retaliation

Plaintiff also alleges she was retaliated against for engaging in EEO activity. Under Tenth Circuit law, a prima facie case for retaliation requires Plaintiff to show: (1) she engaged in protected opposition to Title VII discrimination; (2) she suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action. *See Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1229 (10th Cir. 2004).

Plaintiff's Complaint reflects that her first EEO activity was on April 27, 2020, two days after Plaintiff's altercation with Ms. Polito regarding the lack of training and Plaintiff's schedule being switched. Plaintiff's investigative interview with Ms. Polito occurred on May 8, 2020, and Plaintiff was issued a notice of removal on May 12, 2020, which was later downgraded to a 14-day suspension. For Plaintiff's allegation that Ms. Polito knew of Plaintiff's EEO activity, Plaintiff refers to Exhibit 19, which includes Ms. Polito's statement that she "was first notified by someone in Fort Worth I believe on May 21st that [Plaintiff] had filed an EEO on me for taking her off of the schedule and terminating her." [Doc. No. 1-19, at 1].

Even viewing Plaintiff's allegations in the light most favorable to her, Plaintiff has failed to allege a causal connection between her EEO activity and Ms. Polito's conduct. Rather, it appears from the evidence supplied by Plaintiff that Ms. Polito was not notified of Plaintiff's EEO activity until May 21, two to three weeks after Ms. Polito's investigative interview and recommendation that Plaintiff be removed for insubordination. Plaintiff similarly fails to connect Plaintiff's EEO activity with decisions made by individuals more senior than Ms. Polito, such as the notice of removal or downgraded suspension. For these reasons, Plaintiff's EEO retaliation claim will be dismissed without prejudice.

### III.    Hostile Work Environment

"In determining whether an actionable hostile work environment existed, we look to all the circumstances, to see if the workplace was permeated with discriminatory intimidation, ridicule, and insult sufficiently severe or pervasive to alter the conditions of the plaintiff's employment, and if the plaintiff was subjected to this abusive environment because of her [protected class]." *Juarez v. Utah*, 263 F. App'x 726, 739 (10th Cir. 2008) (unpublished) (quoting *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1169-70 (10th Cir. 2007)).

For her hostile work environment claim, most of Plaintiff's specific allegations refer to the one altercation between her and Ms. Polito, on April 25, 2020, during which Ms. Polito argued with Plaintiff about her schedule being switched and about being assigned to a route she had not been trained to case. Plaintiff also alleges that Ms. Polito's investigative interview and Plaintiff's resulting suspension constitute a hostile work environment. Finally, Plaintiff does not specifically tie Ms. Polito's alleged "Aunt Jemima" comment to

8

a hostile work environment, but the Court will construe Plaintiff's hostile work environment claim as including this offensive racial remark.

Upon consideration, the foregoing allegations—even viewed in Plaintiff's favor—do not rise to the level of severity or pervasiveness required to state a plausible hostile work environment claim. "A plaintiff does not make a showing of a pervasively hostile work environment 'by demonstrating a few isolated incidents of racial enmity or sporadic racial slurs. Instead, there must be a steady barrage of opprobrious racial comments.'" *Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 680 (10th Cir. 2007) (quoting *Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005)). Here, Plaintiff's Complaint falls short of alleging an environment "sufficiently severe or pervasive to alter the conditions of the plaintiff's employment" based on any protected status or activity. *Juarez*, 263 F. App'x at 739. Accordingly, Plaintiff's hostile work environment claim will be dismissed.

**IV.    Disability Discrimination and Failure to Accommodate (Rehabilitation Act)**

Liberally construed, Plaintiff also asserts claims of disability discrimination and failure to accommodate, in violation of the Rehabilitation Act. To make out a prima facie case of disability discrimination under the Rehabilitation Act, Plaintiff must allege facts showing 1) she is disabled within the meaning of the Act; 2) she is otherwise qualified for the job; and 3) she was discriminated against because of her disability. *See Woodman v. Runyon*, 132 F.3d 1330, 1338 (10th Cir. 1997); *see also Vidacak v. Potter*, 81 F. App'x 721, 723 (10th Cir. 2003) (unpublished). To state a failure-to-accommodate claim, Plaintiff must show: "(1) she was disabled; (2) she was otherwise qualified; (3) she requested a plausibly reasonable accommodation; and (4) Defendant refused to accommodate her disability."

9

*Norwood v. United Parcel Serv., Inc.*, 57 F.4th 779, 786 (10th Cir. 2023) (citing *Dansie v. Union Pac. R.R. Co.*, 42 F.4th 1184, 1192 (10th Cir. 2022)).

In the present motion to dismiss, Defendant asserts that Plaintiff's Rehabilitation Act claims should be dismissed only because Plaintiff cites the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 *et seq.*, instead of the Rehabilitation Act. *See Padilla v. Mnuchin*, 836 F. App'x 674, 676 n.1 (10th Cir. 2020) (unpublished) (explaining that federal employees are expressly excluded from coverage under the ADA and must instead seek relief under the Rehabilitation Act for workplace disability discrimination). Given Plaintiff's pro se status, however, the Court liberally construes Plaintiff's disability-related claims as brought under the Rehabilitation Act. *See Padilla*, 836 F. App'x at 676 n.1 ("The district court, construing the pro se filings liberally, read Ms. Padilla's claims as Rehabilitation Act claims; and we do the same."); *Ash v. Buttigieg*, No. CIV-22-371-R, 2022 WL 17225732, at *5 (W.D. Okla. Oct. 24, 2022) ("[I]n construing Plaintiff's pro se filings liberally, the Court reads Mr. Ash's ADA claims as Rehabilitation Act claims."). Further, because Defendant provided no other grounds to dismiss Plaintiff's Rehabilitation Act claims, Defendant's motion to dismiss will be denied as to the same.

## CONCLUSION

For these reasons, Defendant's Motion to Dismiss Plaintiff's Complaint with Brief in Support [Doc. No. 29] is **GRANTED in part**. Plaintiff's race-based discrimination claim and Rehabilitation Act claims survive dismissal. Plaintiff's claims of EEO retaliation

and hostile work environment are hereby **DISMISSED WITHOUT PREJUDICE** but without leave to amend.[4]

**IT IS SO ORDERED** this 22nd day of December, 2025.

TIMOTHY D. DeGIUSTI
Chief United States District Judge

---

[4] "Where a plaintiff does not move for permission to amend the complaint, the district court commits no error by not granting such leave." *Burnett v. Mortgage Electronic Registration Sys., Inc.*, 706 F.3d 1231, 1238 n.4 (10th Cir. 2013). A district court may properly require a plaintiff to file a motion that complies with FED. R. CIV. P. 15(a) and LCvR15.1 before considering whether to allow an amendment. *See Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1283 (10th Cir. 2021); *see also Hall v. Witteman*, 584 F.3d 859, 868 (10th Cir. 2009) (finding that plaintiff "must give adequate notice to the district court and to the opposing party of the basis of the proposed amendment").